**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**MARY LYNN HARTZ,**
**a/k/a Lynn Richardson Hartz,**

**Plaintiff,**

**v.** **Case No. 2:09-cv-01267**

**INDYMAC FEDERAL BANK,**

**Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Plaintiff, Mary Lynn Hartz[1], proceeding *pro se*, filed this action on November 19, 2009, claiming that she was not notified regarding the foreclosure of her home. ("Motion to Reverse Settlement," docket # 1.) Pending before the court are her application to proceed without prepayment of fees and costs (# 1), her "Motion to Reverse Settlement" (which the court deems to be her complaint), and a motion for injunction (# 4), in which she asks the court to stop an eviction proceeding against her. This action is assigned to the Hon. Joseph R. Goodwin, Chief United States District Judge, and referred to the undersigned by Standing Order (# 3).

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2), the court reviews each case in which a plaintiff applies to proceed

[1] Ms. Hartz has been a party in two other cases in this court: United States v. Hartz, No. 2:93-cr-00283; In re Hartz, No. 2:95-cv-00084.

without prepayment of fees and costs. On review, the court must dismiss the case if the complaint is frivolous, malicious, or fails to state a claim upon which relief can be granted. In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555.

The Supreme Court elucidated its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombley*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombley*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering

> a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.[2]

Plaintiff's Motion to Reverse Settlement ("Motion") reads as follows:

> 1. The defendant [sic; plaintiff] never received any of the papers attached in the last document from the plaintiff [sic; defendant] regarding notice of foreclosure. She went to the county courthouse during the late summer and picked them up from the clerk's office. She found out that the notice had been in the newspaper, but she does not take a newspaper, therefore defendant [sic; plaintiff] did not see it.
>
> 2. The bank holding the second mortgage has never been notified. The defendant [sic; plaintiff] keeps receiving bills from them.
>
> 3. The plaintiff [sic; defendant] had the electric service change the billing to another name, which caused the electric to be turned off without her knowledge. This created a problem where she was without electricity for a week and had to get assistance from the West Virginia Public Service Commission to have the electric reconnected in her name.
>
> 4. The FDIC does hold the title to the defendant's [sic; plaintiff's] property. See the attached emails. This does make this a federal case.
>
> 5. The defendant [sic; plaintiff] did agree to move out, but after the power went off in her house, (not related to the previously mentioned situation) she remembered

[2] A motion to dismiss has not been filed in this case yet. Such a motion, filed pursuant to Rule 12(b)(6), Fed. R. Civ. P., asserts that the complaint fails "to state a claim upon which relief can be granted," which is the same standard set forth in 28 U.S.C. § 1915A.

what had happened and a few other things, as well, and decided that this case needs to be heard in federal court.

6. Plaintiff [sic; Defendant] had offered a loan modification; defendant [sic; plaintiff] sent the correct amount, plaintiff [sic; defendant] sent the check back saying it wasn't the right amount. The next correspondence was that another company was handling the loan.

7. It is obvious to the defendant [sic; plaintiff] that the plaintiff [sic; defendant] has violated her privacy because she keeps getting telephone calls from people asking for "Mary" Hartz, a name that is ONLY on the mortgage and she hasn't used since 1994, except for the mortgage. These calls are harrassing, selling things for the house, loans, etc. The ONLY way these places could get the name "Mary" is from the mortgage holder. The calls started after the alleged "foreclosure."

8. A legal document related to this case was delivered to the defendant [sic; plaintiff] by a process server from Magistrate's court. It seems that logically Indymac Bank could have done the same with the foreclosure notice. It is one thing to do things "legally," but entirely another to do them humanely. After all, this has to do with people, their well-being, and care.

9. For the court's information, the defendant [sic; plaintiff] has been ill for months related to medicine which was prescribed and she now no longer takes. Letters from two doctors are attached.

10. The first time defendant [sic; plaintiff] knew anything about the foreclosure was when Eugenia Thomas, an "Assist 2 Sell" Realtor, came to her house and offered her "keys for cash." The people who were living in defendant's [sic; plaintiff's] house took the offer, then the amount offered was changed, then they were told that everyone had to move out of the house for them to receive the cash.

11. Indymac Bank is not located in the State of West Virginia. Therefore, any legal proceedings should be held in Federal Court.

(Motion, at 1-2.) Plaintiff attached 45 pages of documents to her

Motion, with the notation that "[t]hese documents were never read or considered in the Kanawha County Magistrate's Court."

Upon being advised that a related proceeding was filed in the Kanawha County Magistrate Court, court staff obtained copies of the documents filed in that case: Indymac Federal Bank, FSB v. Mary Lynn Hartz, No. 09C-3247. The civil complaint for unlawful detainer was filed on or about September 24, 2009, and states that Indymac Federal Bank, FSB purchased the real estate at 1325 Summit Drive, Charleston, WV, by virtue of a trustee foreclosure sale, and requests possession of the property by evicting Ms. Hartz. A civil summons was issued and personally served on Ms. Hartz on October 5, 2009. Ms. Hartz signed an Agreed Order entered October 16, 2009, in which she agreed to vacate the premises on November 1, 2009. Apparently Ms. Hartz did not vacate the premises, and the Magistrate Court issued a writ of possession on November 9, 2009. Copies of the civil complaint for unlawful detainer, executed summons, Agreed Order and writ of possession have been collectively marked as Court Exhibit 1 and filed herein.

**A. Rooker-Feldman Doctrine.**

First, this court is without jurisdiction to hear Plaintiff's claims under the Rooker-Feldman doctrine. The Supreme Court made clear in D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), that "federal courts are divested of jurisdiction 'where entertaining the federal claim

should be the equivalent of an appellate review of the state court order.'" Friedman's Inc. v. Dunlap, 290 F.3d 191, 196-98 (4th Cir. 2002)(quoting Jordahl v. Democratic Party of Va., 122 F.3d 192, 202 (4th Cir. 1997)); Plyler v. Moore, 129 F.3d 728, 733 (4th Cir. 1997)(Rooker-Feldman applies when the federal action "essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court"). More recently, the Supreme Court reiterated that the Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff is challenging one or more state court orders to evict her from 1325 Summit Drive, and that this court's review of those decisions amounts to an appeal therefrom, and is barred by the Rooker-Feldman doctrine. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge dismiss the plaintiff's "Motion to Reverse Settlement" for lack of jurisdiction under the Rooker-Feldman doctrine.

**B. Younger Abstention.**

Furthermore, in the instant case, this Court should abstain from exercising subject matter jurisdiction over the plaintiff's

claims under the "Younger-abstention doctrine," as defined in Younger v. Harris, 401 U.S. 37 (1971). "Under [the] Younger-abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 237-38 (1984).

The Fourth Circuit has instituted a three-part test for determining when Younger abstention is appropriate: "(1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity to present the federal claims in the state proceeding." Employers Resource Mgmt. Co., Inc. v. Shannon, 65 F.3d 1126, 1134 (4th Cir. 1995).

Matters concerning ownership of real property are generally on-going proceedings and the rightful transfer of real property is certainly an important state interest. It would appear to this court that the matters in controversy herein may still be on-going, and that the plaintiff has had adequate opportunity to present her claims in the state court proceedings. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge abstain from exercising jurisdiction over Plaintiff's Motion to Reverse Settlement for lack of jurisdiction.

Recommendation

It is respectfully **RECOMMENDED** that the Motion to Reverse Settlement, Application to Proceed without prepayment of fees and costs and Motion for Injunction be denied and this action be dismissed with prejudice.

Notice

Plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th

Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff.

December 2, 2009
Date

Mary E. Stanley
Mary E. Stanley
United States Magistrate Judge